ORDERED.

**Dated:  September 30, 2021**



Jerry A. Funk
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

In re:                                                                    Case No. 3:20-bk-1882-JAF


ARTHUR THOMAS HILL                              Chapter 7
and SUSAN SPENCE HILL,
                Debtors.
_____/

MKL ENTERPRISES, d/b/a                          Adv. Pro. No. 3:20-ap-114-JAF
DRIMAXX,

        Plaintiff,
v.

ARTHUR THOMAS HILL
and SUSAN SPENCE HILL,

        Defendants.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

        This proceeding came before the Court for trial upon an Amended Complaint (Doc. 9)

seeking to except the debt owed by the Defendants, Arthur Thomas Hill and Susan Spence Hill

(the "Hills"), to the Plaintiff, ("Drimaxx"), from the Hills' discharge. In lieu of oral argument, the

Court directed the parties to submit memoranda in support of their respective positions. Upon the evidence and the applicable law, the Court makes the Following Findings of Fact and Conclusions of Law.

### Findings of Fact

On October 7, 2016, Hurricane Matthew hit St. Augustine, Florida resulting in water intrusion and damage to the Hills' home. The Hills' home was insured by the National Flood Insurance Program (the "NFIP"), which is managed by the Federal Emergency Management Agency ("FEMA").[1] "The NFIP, through the cooperative efforts of the Federal Government and private insurance industry, makes Standard Flood Insurance Policies ('SFIP') available to individuals who seek protection [and] can be purchased directly from FEMA or from a [Write-Your-Own] insurance carrier" participating in the program.[2] The Hills' insurance policy contained a $2,000.00 deductible.

On October 8, 2016, the Hills contacted Drimaxx, a water remediation contractor. On that same day, the Hills and Drimaxx entered into a contract for dry-out, demolition, and restoration services (the "Contract"). (Drimaxx's Ex. 1). The contract included a section titled "Credit Terms" which contained the following language:

> The undersigned customer understands and agrees that in consideration for credit being extended herein they shall be liable for all amounts charged, ordered, purchased, received ... until such time as this agreement is canceled or until all amounts due hereunder are paid in full. Customer further understands that they are responsible for these charges regardless of whether or not customer receives reimbursement from any insurance carrier.

---

[1] https://www.fema.gov/flood-insurance.
[2] Roll v. USAA Gen. Indem. Co., 2020 WL 3052123, at *1 (Feb. 12, 2020).

(Id.). Mr. Hill testified that Joel Martin, Drimaxx's project manager, who "signed [the Hills] up," assured them that Drimaxx is paid directly by FEMA and that the Hills would have no financial obligation "beyond FEMA's requirement." Mr. Hill testified that the Hills interviewed three water remediation companies who all indicated they would be paid directly from FEMA and that FEMA has very strict guidelines within which water remediation contractors work on the mitigation process. Mr. Hill testified that without such assurances, the Hills would not have entered into the Contract.

The Contract also contained a section titled "Authorization for Direct Pay and Assignment of Insurance Proceeds" which provided:

> I authorize and instruct all insurance companies that may be
> contractually obligated to provide benefits and or payments to me
> based upon or related to damage to my home or all remediation,
> repairs, and/or improvements performed or provided by Drimaxx,
> with Drimaxx as the sole payee … In the event any Insurer obligated
> to make payment to me or to Drimaxx under this document, for
> Drimaxx's Services refuses, neglects, declines or delays in making
> payment to Drimaxx upon Drimaxx's demand, I hereby assign and
> transfer to Drimaxx any and every cause of action that exists in my
> favor against any such Insurer … I agree to cooperate fully with
> Drimaxx's attorneys, and to make any and all of my damaged
> property available for inspection or use by Drimaxx to protect
> Drimaxx's interests.

(Id.).  However, apparently unbeknownst to the Hills, the NFIP and FEMA do not honor direct pay and assignment of benefits contracts. Karl Hague, Drimaxx's former operations manager, testified that Drimaxx had never "done FEMA work before." He testified that with typical insurance work, a contractor contacts the insurance adjuster. However, FEMA does not permit its adjusters to speak to contractors unless the insured signs a document granting such permission. Matthew Byatt, Drimaxx's owner, testified that he was aware that the NFIP and FEMA do not accept assignment of benefits contracts but that Drimaxx's contract was with the Hills, not FEMA.

From October 8, 2016, until October 25, 2016, Drimaxx performed services at the Hills' home. (Drimaxx's Ex. 29, p. 16). On October 11, 2016, the Hills paid $500.00 of the $2,000.00 deductible to Drimaxx. (Drimaxx's Ex. 2). On October 14, 2016, Amica, the Hill's wind carrier, paid the Hills $7,308.75. (Drimaxx's Ex. 8). On October 18, 2016, FEMA paid the Hills $10,000.00 for building damage and $10,000.00 for contents damage. (Drimaxx's Ex. 7).

On November 1, 2016, the Hills paid an additional $500.00 of the deductible to Drimaxx. (Drimaxx's Ex. 2). On November 16, 2016, Drimaxx sent the Hills an invoice in the amount of $49,649.19, along with a detailed explanation of the work performed and the costs attributable to each task. The invoice represented the total work completed in the amount of $50,649.19, less $1,000.00 of the $2,000.00 deductible which the Hills had paid. (Drimaxx's Ex. 3). On that same day, Drimaxx sent the same information to Barry Murray, the Hills' FEMA adjuster. (Hills' Ex. 1). Mr. Murray forwarded the email to Mr. Hill but did not copy Drimaxx or initiate any communication with Drimaxx. (Id.)

On November 29, 2016, the Hills received an estimate from FEMA which allocated $28,964.66 for Drimaxx's work. (Drimaxx's Ex. 9). The estimate was not supplied to Drimaxx. On December 14, 2016, the Hills received a revised FEMA estimate that allocated $11,458.27 for Drimaxx's work. (Drimaxx's Ex. 6). The estimate reduced payment to three days, despite Drimaxx's work exceeding that time. The Hills would not have approved Drimaxx's work if Drimaxx had left after three days. (Drimaxx's Ex. 27, p. 52).

On December 22, 2016, FEMA paid the Hills an additional $46,682.46 in building damages. (Drimaxx's Ex. 7).[3] On December 29, 2016, the Hills paid Drimaxx the remaining $1,000.00 of the deductible. (Drimaxx's Ex. 2).

---

[3] The payments from FEMA were payable both to the Hills and their mortgage company. The mortgage company required contractors to submit supporting documentation after which the funds were released.

On December 29, 2016, the Hills began renovating their home. Paul Barton, a long-time family friend and contractor, performed the work. By February 17, 2017, the Hills' home had a new upgraded electrical system, which was not covered by insurance, a new kitchen island, which was not covered by insurance, new tongue-in-groove ceilings, which were not covered by insurance, and new walls, which were partially covered by insurance.[4]

On January 23, 2017, Drimaxx filed a Claim of Lien against the Hills' home, which was recorded on January 24, 2017, indicating that the Hills owed Drimaxx $48,649.19. (Drimaxx's Ex. 4). On February 14, 2017, Mr. Hill sent an e-mail to Drimaxx stating "I have 'finally' received my FEMA insurance check and want to pay you for the mitigation you did on my property" provided that Drimaxx sign a release of the January 23, 2017 Claim of Lien. (Drimaxx's Ex. 5).

On April 14, 2017, the Hills moved into a completely renovated and significantly upgraded home. (Drimaxx's Exs. 13, 15, 16). On that same day, Drimaxx sent a letter to Mr. Hill offering the services of an insurance adjuster to review the FEMA claim so that Drimaxx could get paid. (Drimaxx's Ex. 5). Mr. Hill was contacted by the adjuster but refused to give out information over the phone because "there [was] a lot of fraud and price gouging going on [and] I did not know who this individual [was]." (Drimaxx's Ex. 31, p. 25).

On April 21, 2017, Drimaxx sent a letter to the Hills requesting payment and threatening to foreclose on the Claim of Lien. (Drimaxx's Ex 5). On May 3, 2017, the Hills, through their attorney, sent a letter to Drimaxx indicating that the Hills would pay $11,458.27 to Drimaxx for the services it had provided, in exchange for a full release of all claims. (Id.) The letter indicated that $11,458.27 was the amount the Hills' flood insurance allowed for Drimaxx's services. Until

---

[4] The Court does not know the cost of the upgrades.

that point, the Hills had not informed Drimaxx how much they intended to pay Drimaxx for its services.

During that time, the Hills were awaiting payment of an additional $23,515.71 from FEMA due to a supplemental claim they filed on behalf of themselves. (Drimaxx's Ex. 7). At that point, Drimaxx was not able to appeal FEMA's decision as to the value of Drimaxx's services because the Hills had not given FEMA permission to talk to Drimaxx.

On June 30, 2017, Drimaxx released the recorded construction lien. (Drimaxx's Ex. 25). Between October 20 and November 30, 2017, Drimaxx's attorney sought to obtain information from the Hills about the FEMA claims. (Drimaxx's Ex. 5). On November 19, 2017, Mr. Hill drafted an email indicating that he would pay Drimaxx $8,758.27 for its services: this amount represented the $11,458.57 which the NFIP had allowed for Drimaxx's claim, reduced by the $2,000.00 deposit, and reduced by $700.00 for attorney's fees Mr. Hill alleged he had incurred. Mr. Hill indicated that if Drimaxx accepted the offer, he would write a letter to the NFIP allowing it to discuss the Hills' policy with Drimaxx. (Id.) Alternatively, Mr. Hill indicated that he would pay Drimaxx $9,458.27, which was $11,458.57 reduced by the $2,000.00 deposit, but would not write a letter to the NFIP granting it permission to discuss his policy with Drimaxx. (Id.) Mr. Hill knew on that date that Drimaxx was not communicating with FEMA.  (Drimaxx's Ex 31, p. 14).

On December 5, 2017, Drimaxx filed a complaint against the Hills in the Circuit Court in St. Johns County (the "Circuit Court") alleging breach of contract and seeking recovery of the entire billed amount, less the deductible paid by the Hills. The Hills asserted a number of affirmative defenses, including the defense of promissory or equitable estoppel. Specifically, the Hills alleged that they detrimentally relied on oral promises made by Drimaxx's agent and sought

to limit the amount owed to Drimaxx to the amount allocated by FEMA for Drimaxx's work. (Drimaxx's Ex. 22).

Three months after Drimaxx filed suit against the Hills, Mr. Hill requested that Mr. Barton prepare an estimate of the value of Drimaxx's services for use in the litigation. Mr. Hill's email to Mr. Barton stated: "What we have been told by many sources is it should have been done in a week or less and cost somewhere between $10,000 and $12,000, just not an even number. It should include 1) Your background [and] 2) That you were in the house from the beginning and have a clear idea of the scope of the project." (Drimaxx's Ex. 12). Mr. Barton is not an expert in water remediation and was not at the Hills' home until after Drimaxx had completed its work.

In discovery in the Circuit Court litigation, Drimaxx received, for the first time, the complete FEMA estimate, which allocated $11,458.27 for Drimaxx's work. Drimaxx retained Kevin O'Connor to review the payment for its validity and to review Drimaxx's supplemental and appeal rights if the claim was underpaid. Mr. O'Connor concluded that FEMA wrongly adjusted the claim and that the Hills' failure to turn over the detailed information to Drimaxx impaired Drimaxx's ability to timely file an appeal with FEMA.

On January 24, 2020, after a week-long trial in the Circuit Court, the jury rendered a verdict finding that Drimaxx proved that the Hills breached the Contract by failing to pay for the work done at their home. (Drimaxx's Ex. 17). The jury rejected the Hills' promissory/equitable estoppel affirmative defense, finding that the Hills failed to prove that the Contract was amended by estoppel to limit Drimaxx's recovery to only what was paid by FEMA. (Id.) The jury found that Drimaxx was entitled to recover $48,745.00 under the Contract for the work performed at the Hills' home.  (Id.). On May 27, 2020, the Circuit Court entered a Final Judgment in the amount of

$160,474.11, comprising $46,745.00 for the Hills' breach of contract, $25,878.06 for pre-judgment interest, $75,285.00 for attorney's fees, and $12,566.05 for costs. (Drimaxx's Ex. 18).

On June 18, 2020, the Hills filed this Chapter 7 bankruptcy case. On September 21, 2020, Drimaxx filed this adversary proceeding seeking to except the Hills' debt to Drimaxx from their discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6).

## Conclusions of Law

While the fundamental goal of the Bankruptcy Code is to provide the honest debtor with a fresh start, such a policy must be tempered by the need to prevent dishonest debtors from using the law as a shield. See Jones v. J.G. Wentworth S.S.C. Ltd. P'ship (In re Berghmann), 235 B.R. 683, 693 (Bankr. M.D. Fla. 1999) (citing Bracco v. Pollitt, 145 B.R. 353, 355 (Bankr. M.D. Fla. 1992)). Exceptions to discharge are construed strictly against creditors and liberally in favor of honest debtors. St. Laurent v. Ambrose (In re St. Laurent), 991 F.2d 672, 680 (11th Cir. 1993). Under the circumstances prescribed in § 523, certain debts are excepted from a debtor's discharge. Here, Drimaxx seeks to except the Hills' debt to it from the Hills' discharge pursuant to §§ 523(a)(2)(A), (a)(4), and (a)(6).

### 11 U.S.C. § 523(a)(2)(A)

Drimaxx seeks to have the Hills' debt excepted from their discharge pursuant to § 523(a)(2)(A) which provides, in pertinent part:

> A discharge ... does not discharge an individual debtor from any debt—
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523. Section 523(a)(2)(A) sets forth three separate grounds for non-dischargeability: false pretenses, a false representation, and actual fraud. Holland Builders, Inc. v. Lloyd (In re Lloyd), 549 B.R. 282, 291 (Bankr. M.D. Fla. 2016). "Courts have generally interpreted §

523(a)(2)(A) to require the traditional elements of common law fraud. A creditor must prove that: (1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation." SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998).

> [However], [t]he concept of false pretenses is especially broad. It includes any intentional fraud or deceit practiced by whatever method in whatever manner. False pretenses may be implied from conduct or may consist of concealment or non-disclosure where there is a duty to speak, and may consist of any acts, work, symbol, or token calculated and intended to deceive ... It is a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or a false and misleading understanding of a transaction, by which a creditor is wrongfully induced by a debtor to transfer property or extend credit to the debtor ... Silence or concealment as to a material fact can constitute false pretenses.

In re Lloyd, 549 B.R. at 292 (citing Taylor v. Wood (In re Wood), 245 F. App'x 916, 918 (11th Cir. 2007)).

Drimaxx asserts that the following conduct by the Hills warrants an exception to their discharge pursuant to § 523(a)(2)(A): 1) "hiding" insurance payments from Drimaxx; 2) redirecting the insurance payments to upgrades rather than payment to Drimaxx; 3) preventing Drimaxx from finding the "true nature" of the moneys received; and 4) preventing Drimaxx's ability to appeal the claim by "hiding payment data" until after the deadline to file an appeal had elapsed.

Citing to Husky Int'l Electronics v. Ritz, 136 S.Ct. 1581 (2016), Drimaxx asserts that there is no requirement that fraudulent conduct occur at the inception of a credit transaction in order for the resulting debt to be excepted from discharge under § 523(a)(2)(A). The Eleventh Circuit recently rejected such an argument. See Gaddy v. SE Prop. Holdings, LLC (In re Gaddy), 977 F.3d 1051 (11th Cir. 2020). In that case the debtor personally guaranteed a business debt. Years later, in an attempt to hinder the creditor's collection efforts, the debtor conveyed real and personal

property. The creditor argued that the fraudulent conveyances rendered the original breach of contract debt non-dischargeable under § 523(a)(2)(A). The Eleventh Circuit noted that in both Husky and McClellan v. Cantrell, 217 F.3d 890 (7th Cir. 2000), the other case upon which the creditor relied, someone other than the bankruptcy debtor initially owed a debt for which the bankruptcy debtor later became at least partially liable.  In re Gaddy, 977 F.3d at 1057. The court found that the Supreme Court did not eliminate the requirement that the money or property [or services] giving rise to the debt must have been "obtained by" fraud but simply recognized that fraudulent transfers of assets to avoid creditors can satisfy the "obtained by" requirement in some circumstances despite lacking a misrepresentation.  Id. at 1057. The court stated: "[h]ere [the creditor]'s assertions fail not because [the debtor] did not engage in 'actual fraud' by conveying his assets, but because the [subject] loans were not 'obtained by' fraud as required for [exception] under § 523(a)(2)(A)."  Id. at 1058.  Noting that "[the creditor] presents no binding authority that supports its assertion that a debtor's fraudulent conveyance of assets in an attempt to avoid collection of a preexisting debt renders that preexisting debt exempt from discharge under § 523(a)(2)(A)[,]" the court held that the debt was not excepted from discharge under that section. (Id.)

The jury in the Circuit Court rejected the Hills' equitable estoppel affirmative defense.  The elements of equitable estoppel are: (1) a representation as to a material fact that is contrary to a later-asserted position; (2) reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon. State Dep't of Revenue v. Anderson, 403 So. 2d 397, 400 (Fla. 1981). By rejecting the Hills' estoppel defense, the jury found that: 1) Drimaxx's representative did not represent to the Hills that they would have

no financial responsibility beyond the amount "allowed" by FEMA for Drimaxx's work; or 2) Drimaxx's representative made the representation, but the Hills did not detrimentally rely on it.

The issue before the Court in determining whether the Hills' debt is excepted from their discharge under § 523(a)(2)(A) is whether the Hills made a false representation to induce Drimaxx to perform the remediation services. In order words, did the Hills have no intention of paying Drimaxx for its services at the time they entered into the Contract even if the cost of Drimaxx's services ultimately exceeded what FEMA would allow? The Court finds that at the time the Hills entered into the Contract with Drimaxx, they intended to pay Drimaxx for its services. There is simply no evidence that the Hills made a false representation or engaged in any fraudulent conduct upon which Drimaxx relied in order to provide services to the Hills in the first instance.

This is not to say that the Hills did not engage in unsavory conduct after they incurred the debt to Drimaxx. Even if the Hills believed when they signed the Contract that their liability was limited to what FEMA would allow (and the jury's rejection of the Hills' estoppel defense makes that doubtful), the Hills thwarted Drimaxx's efforts to be paid. Notably, Mr. Hill declined to work with the insurance adjuster hired by Drimaxx and made no attempt to secure an insurance adjustor acceptable to both parties. Additionally, the Hills thwarted Drimaxx's ability to timely appeal FEMA's decision as to the value of Drimaxx's services by not giving FEMA permission to speak to Drimaxx. However, while such conduct was essentially an attempt to hinder Drimaxx's collection efforts, it does not render the breach of contract debt nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).  The Court holds that the debt is not excepted from discharge on this basis.

### 11 U.S.C. § 523(a)(6)

Drimaxx also seeks to have the Hills' debt excepted from their discharge pursuant to § 523(a)(6) which excepts from discharge any debt "for willful and malicious injury by the debtor

to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). "[A] debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." <u>Maxfield v. Jennings (In re Jennings)</u>, 670 F.3d 1329, 1334 (11th Cir. 2012). "Malicious means wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill will." <u>Id.</u>

Plaintiff asserts that the following conduct by the Hills' warrants an exception to their discharge pursuant to § 523(a)(6): 1) refusing to provide insurance payment information to Drimaxx; 2) using the insurance proceeds to upgrade their home rather than to pay Drimaxx; 3) creating a false bill to submit in litigation; and 4) attempting to obtain a full personal release in exchange for issuing a payment Drimaxx that was insufficient to cover the work completed.

The creditor in <u>Gaddy</u> also argued that the debt was excepted from discharge under § 523(a)(6) because the creditor was injured by the debtor's fraudulent conveyances of his personal assets, which he made willfully and maliciously. After setting forth the willful and malicious standard, the court stated:

> [The creditor] skip[ped] an important step in its § 523(a)(6) analysis.  To be [excepted] from discharge under this provision, and obligation must be a "debt … *for* willful and malicious injury." As the Supreme Court has explained, "'debt for' is used throughout [§ 523(a)] to mean 'debt as a result of,' 'debt with respect to,' debt by reason of,' and the like."  In this case the [debt at issue] is a contract debt that was incurred long before the challenged conveyances … and the conveyances are not traceable to that debt, which arose from an ordinary breach of contract…We are not persuaded by [the creditor]'s argument that actions taken by a debtor after a debt is incurred, even if in an effort to thwart a creditor's collection efforts, create a separate injury for the purposes of § 523(a)(6).

<u>Id.</u> at 1058. The court held that the debt was not "for willful or malicious injury" to the creditor or its property and was not excepted from discharge pursuant to § 523(a)(6). The Hills' debt to Drimaxx was not a debt "for," "as a result of," "with respect to," or "by reason of" willful and malicious injury."  The debt resulted from services performed. As the Court noted in its discussion

of § 523(a)(2)(A), the Hills' conduct in the months after Drimaxx performed the contracted for services, while unsavory, did not result in the debt owed to Drimaxx in the first instance.

### 11 U.S.C. § 523(a)(4)

Finally, Drimaxx also seeks to have the Hills' debt excepted from their discharge pursuant to § 523(a)(4), which excepts from discharge any debt for "embezzlement." 11 U.S.C. § 523(a)(4). Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. Ford v. Pupello (In re Pupello), 281 B.R. 763, 767 (Bankr. M.D. Fla. 2002). A plaintiff must also prove that the embezzled property was the plaintiff's property. Florida Outdoor Equip., Inc. v. Tomlinson (In re Tomlinson), 220 B.R. 134, 136 (Bankr. M.D. Fla. 1998). Drimaxx asserts that the insurance funds lawfully came into the Hills' possession through their direct contact with FEMA. However, Drimaxx contends that the funds were its property because the Hills assigned the funds to Drimaxx when they entered into the Contract. Drimaxx argues that the Hills embezzled Drimaxx's property when they used the insurance proceeds for substantial upgrades to their residence rather than pay the funds to Drimaxx.

The Court finds that Drimaxx did not prove that the assignment is valid. Although Drimaxx asserts that the Circuit Court determined that the assignment is valid, there is no evidence before the Court that it did. While the Hills asserted an affirmative defense of "lack of standing as the assignment is invalid," the jury's breach of contract finding does not amount to a finding that the assignment was valid. The validity (or invalidity) of the assignment might have been a defense if Drimaxx had sued FEMA or the participating insurance company for breach of contract. But the jury did not have to determine that the assignment was valid in order to find that the Hills breached the Contract, only that the Hills failed to pay Drimaxx for the work done at their home. The SFIP permits the assignment of a policy, under certain conditions, when title to the property transfers to

a new owner but does not allow the assignment of a claim. <u>Express Damage Restoration, LLC v.</u> <u>Wright Nat'l Flood Ins. Co.</u>, 2019 WL 6699702, at * 3 (S.D. Fla. Dec. 9, 2019). Because Drimaxx failed to prove that the assignment is valid, it failed to prove that the insurance proceeds were its property, and the claim for embezzlement fails. The Hills' debt to Drimaxx is not excepted from their discharge pursuant to 11 U.S.C. § 523(a)(4).

## **<u>Conclusion</u>**

The Hills' debt to Drimaxx is for a breach of contract and is not excepted from discharge under 11 U.S.C. § 523(a)(2)(A), § 523(a)(4), or § 523(a)(6). The Hills' request for attorney's fees pursuant to § 523(d) is denied. The Court will enter a separate judgment consistent with these Findings of Fact and Conclusions of Law.